# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| FARANGIS KHAMRABAEVA, *et al.* | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 22-cv-1219 (RC) |
| | : | | |
| v. | : | Re Document No.: | 14, 16, 20 |
| | : | | |
| ANTONY BLINKEN, U.S. Secretary of State, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |
| ZEBO MAVLONOVA, *et al.* | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 22-cv-2400 (RC) |
| | : | | |
| v. | : | Re Document No.: | 3, 9, 11 |
| | : | | |
| ANTONY BLINKEN, U.S. Secretary of State, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |
| NOHA MAHMOUD ELSAYED ELSADAWY, *et al.* | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 22-cv-1381 (RC) |
| | : | | |
| v. | : | Re Document No.: | 15, 16, 19 |
| | : | | |
| ANTONY BLINKEN, U.S. Secretary of State, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |
| SHERIF SHAABAN IBRAHIM DAIF, *et al.* | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 22-cv-2474 (RC) |
| | : | | |
| v. | : | Re Document No.: | 6, 7, 9 |

|                                      |   |                  |               |
|--------------------------------------|---|------------------|---------------|
| ANTONY BLINKEN,                      | : |                  |               |
| U.S. Secretary of State, *et al.*,   | : |                  |               |
|                                      | : |                  |               |
|     Defendants.  | : |                  |               |
|                                      |   |                  |               |
| KHOLMATJON VOKHOBOV, *et al.*        | : |                  |               |
|                                      | : |                  |               |
|     Plaintiffs,  | : | Civil Action No.: | 22-cv-2128 (RC) |
|                                      | : |                  |               |
| v.                                   | : | Re Document No.: | 8, 9, 11      |
|                                      | : |                  |               |
| ANTONY BLINKEN,                      | : |                  |               |
| U.S. Secretary of State, *et al.*,   | : |                  |               |
|                                      | : |                  |               |
|     Defendants.  | : |                  |               |

## MEMORANDUM OPINION

### DENYING PLAINTIFFS' MOTIONS FOR TEMPORARY RESTRAINING ORDERS

### I. INTRODUCTION

Before the Court are motions for a temporary restraining order ("TRO") in five cases.[1] In each case, Plaintiffs are families of foreign nationals who were selected out of a lottery run by the U.S. Department of State (the "Department") to participate in the diversity visa ("DV") program for fiscal year 2022. The DV program allocates up to 55,000 immigration visas annually to qualified individuals from countries with historically low levels of immigration to the United States through an intricate lottery system. Plaintiffs filed suit alleging that the

---

[1] Although Plaintiffs' motion is not styled as a motion for preliminary injunction, the Court treats it as such because it was subject to full briefing and a hearing and Plaintiffs are "effectively foreclose[d] . . . from pursuing further interlocutory relief." *Belbacha v. Bush*, 520 F.3d 452, 455 (D.C. Cir. 2008) (internal quotation omitted); *see also Miller v. Mitchell*, 598 F.3d 139, 145 (3d Cir. 2010) (treating a TRO as a preliminary injunction because "it was entered for an indeterminate period of time after notice to the defendant and an adversary hearing").

2

Department unlawfully withheld adjudication of their diversity visa applications. In early September 2022,[2] Plaintiffs filed substantially similar TRO motions in each case seeking declaratory and injunctive relief ahead of September 30, 2022, the statutory deadline after which their eligibility to participate in the fiscal year 2022 DV program expires. Defendants filed an opposition in *Khamrabaeva v. Blinken*, No. 22-cv-1219 on September 13, 2022 ("Def.'s Opp'n"). At the Court's request, Defendants submitted a joint opposition, incorporating and supplementing the opposition in *Khamrabaeva,* in the remaining four cases on September 16, 2022 ("Def.'s Joint Opp'n") and Plaintiffs filed a joint reply on September 19, 2022. The Court held a hearing on the motions on September 20, 2022. Because Plaintiffs' motions involve common questions of law and fact, the Court considers them jointly. Fed. R. Civ. P. 42(a). The Court sympathizes with Plaintiffs' situation, but for the reasons stated below their motions are denied.

## II.  LEGAL AND FACTUAL BACKGROUND

In general, a foreign national who seeks to enter the United States must first obtain a visa from the Department. Under two umbrella categories – immigrant visas and nonimmigrant visas – a variety of different types of visas may be granted to applicants under different conditions and for different purposes. *See* Directory of Visa Categories, Department of State, available at https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/all-visa-categories.html. Immigrant visas are for those who intend to relocate permanently to the United

---

[2] Motions were filed in each case on the following days: *Khamrabaeva v. Blinken*, No. 22-cv-1219 on September 6, 2022; *Mavlonova v. Blinken*, No. 22-cv-2400 on September 9, 2022; *Elsadawy v. Blinken*, No 22-cv-1381 on September 12, 2022; *Daif v. Blinken*, No. 22-cv-2474 on September 13, 2022; *Vokhobov v. Blinken*, No. 22-cv-2128 on September 14, 2022.

States, while nonimmigrant visas are for those seeking to stay only temporarily. Only one category of immigrant visa is relevant to this case: the diversity visa.

The DV program allocates up to 55,000 visas annually for foreign nationals seeking to permanently relocate to the United States from historically "low-admission" countries and regions. *See* 8 U.S.C. §§ 1151(a)(3), (e); 8 U.S.C. § 1153(c). Anticipating the large number of individuals who apply for diversity visas each year, Congress created rules governing the diversity visa application and adjudication process and empowered the Secretary of State (the "Secretary") to oversee it. *See* 8 U.S.C. §§ 1153(c), 1154(a)(1)(I), 1202.[3] Specifically, Congress directed the Secretary to establish a system to issue diversity visas to "eligible qualified immigrants strictly in a random order." 8 U.S.C. § 1153(e)(2). That system, embodied by 22 C.F.R. § 42.33, takes the form of an annual lottery.

At a high level, individuals like Plaintiffs who were lucky enough to be chosen from this lottery ("selectees") have the opportunity submit a visa application and receive a "rank order" that determines the order in which they may be scheduled for an interview at a U.S. embassy or consulate to have their application adjudicated. *See* 22 C.F.R. § 42.33(b)-(d); *Gomez v. Trump*, 485 F. Supp. 3d 145, 159 (D.D.C. 2020). Selectees whose applications have not been adjudicated by the end of the fiscal year on September 30 lose eligibility. 22 C.F.R. § 42.33(f). Plaintiffs, whose families seek to immigrate from Tajikistan, the United Arab Emirates, Saudi Arabia, and Uzbekistan, filed suit to avoid such an outcome.

---

[3] Congress also empowered the Secretary to issue regulations to maintain the waiting list for visa applicants. 8 U.S.C. §1153(e)(3).

## III.  LEGAL STANDARD

Like a preliminary injunction, a temporary restraining order is an "extraordinary remedy." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *Gomez v. Trump*, 485 F. Supp. 3d at 168 ("Motions for temporary restraining orders and preliminary injunctions are analyzed using the same standards.").  When considering an application for emergency injunctive relief, courts consider four factors: "(1) whether there is a substantial likelihood that plaintiffs will succeed on the merits of their claims, (2) whether plaintiffs will suffer irreparable injury absent an injunction, (3) whether an injunction would harm the defendants or other interested parties (the balance of harms), and (4) whether the public interest would be furthered by an injunction." *Monument Realty LLC v. Washington Metro. Area Transit Auth.*, 540 F. Supp. 2d 66, 74 (D.D.C. 2008).  A TRO "should be granted only when the party seeking relief, by a clear showing, carries the burden of persuasion" on all four factors.  *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004).

Courts in this district have described the substantial likelihood of success on the merits factor as "particularly important" because without such a showing, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review." *Hubbard v. United States*, 496 F. Supp. 2d 194, 198 (D.D.C. 2007) (quoting *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999)).  "[A] failure to show a likelihood of success on the merits is sufficient to defeat a motion for a preliminary injunction." *Archdiocese of Washington v. Washington Metro. Area Transit Auth.*, 281 F. Supp. 3d 88, 99 (D.D.C. 2017), aff'd, 897 F.3d 314 (D.C. Cir. 2018) (citing first *Ark. Dairy Co-op Ass'n, Inc. v. United States Dep't of Agric.*, 573 F.3d 815, 832 (D.C. Cir. 2009); and then *Apotex, Inc. v. FDA*, 449 F.3d 1249, 1253–54 (D.C. Cir. 2006)).

## IV.  ANALYSIS

Plaintiffs selected four claims from their pleadings to pursue in their TRO motions: (1) that the Department unlawfully withheld consular interviews and therefore Plaintiffs' ability to complete their visa applications, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1); (2) that the Department unreasonably delayed adjudication of their visa applications, in violation of 5 U.S.C. § 706(1); (3) that two changes to the Department's visa processing and adjudication policies were arbitrary and capricious under the APA, 5 U.S.C. § 706(2); and (4) that the Department's failure to fulfill its legal duty to adjudicate Plaintiffs' visa applications gives the court mandamus jurisdiction under 28 U.S.C. § 1361.  *See* Plaintiffs' Motion for Temporary Restraining Order ("TRO"), *Vokhobov v. Blinken*, No. 22-cv-2128, ECF No. 8-1 at 16-28.[4]

The Court considers the third allegation first, which it will refer to as the "policy claims," before proceeding to joint consideration of claims one, two, and four.[5]  In service of these claims, the motion fleetingly alleges that the Department adjudicated diversity visa applications out of rank order.  TRO at 21, 28.  Plaintiffs' reply brief seemingly attempts to recast these spare allegations as a separate claim under *Accardi v. Shaughnessy*, 347 U.S. 260 (1954), backed up by

---

[4] Because Plaintiffs' motions are substantially similar in each case, for ease of reference and unless otherwise specified, the Court will cite to docket numbers and use pin citations corresponding to filings in *Vokhobov v. Blinken*, 22-cv-2128, the case in which Plaintiffs' most recent motion for a temporary restraining order was filed.

[5] The parties dispute whether Plaintiffs properly pleaded a mandamus claim under 18 U.S.C. § 1361.  Regardless, the Court's analysis would not change, as "the standards for obtaining relief under the Mandamus Act and the APA provision permitting courts to compel agency action unlawfully withheld . . . are essentially the same." *Verma v. United States Citizenship and Immigration Servs.*, 2020 WL 7495286 *1, *5 n.3 (D.D.C. 2020) (citing *Vietnam Veterans of Am. v. Shineseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010) (internal quotations omitted).  As such, "when a plaintiff fails to establish an undue delay, its claim for mandamus relief under 28 U.S.C. § 1361 necessarily fails as well." *Id.* (internal quotations omitted).

new factual allegations.[6]  *See* Plaintiffs' Reply, *Vokhobov v. Blinken*, 22-cv-2128, ECF No. 11, at 13-15.  The Court takes note of these factual allegations for purposes of evaluating Plaintiffs' other claims, but does not consider this standalone *Accardi* claim because it was not properly pled and Defendants did not have an opportunity to respond.  *See Bird v. Barr*, 2020 WL 4219784 *1, *2 (D.D.C. July 23, 2020) ("[A] proper motion for a preliminary injunction seeks to enjoin the action that the complaint alleges is unlawful prior to the completion of the litigation, and without such a connection between the claim and requested injunction, there is simply no jurisdictional basis for the Court to grant preliminary relief.") (formatting omitted).

### A. Policy Claims

Plaintiffs' policy claims arise out of two actions taken by the Department that allegedly affected the processing and adjudication of diversity visa applications.  First, Plaintiffs take issue with a February 2022 amendment to a section of the Department's internal guidelines, embodied in the Foreign Affairs Manual ("FAM"), that deals with diversity visa processing (the "FAM amendment").  TRO at 6-8.  Specifically, in February 2022, 9 FAM 502.6-4 was amended to read that the Kentucky Consular Center ("KCC"), which is responsible for pre-adjudicatory processing of diversity visa applications, will schedule interviews for applicants "*around the time* their regional program rank number is current," whereas previously it said that KCC will schedule interviews when an applicant's "regional lottery rank number *is about to become* current."  *Compare* Ex. B to TRO at 12, ECF No. 8-4 *with* Ex. C to TRO at 11, ECF No. 8-5 (emphasis added).  This followed a processing change announced by the Department in December 2021, which allowed selectees to submit only a form DS-260 immigrant visa

---

[6] This new *Accardi* claim is separate from the *Accardi* claims that Plaintiffs included in their pleadings but forewent in their TRO motions.

application, without the supporting documents that were previously required, in order to initiate processing of their application. TRO at 6-7; Ex. A to TRO, ECF No. 8-3.

Second, Plaintiffs take issue with a cable from the Department, 21 STATE 115378, issued on November 16, 2021 (the "cable"). *See* Ex. E to TRO, ECF No. 8-7. Plaintiffs allege that the cable, which rescinded and replaced COVID-related guidance concerning visa prioritization, constituted the beginning of a "recalibration" or "quasi-prioritization" policy that interfered with the processing and adjudication of Plaintiffs' diversity visa applications. TRO at 8-9 & n.2; Ex. E to TRO.

Plaintiffs lack standing to pursue these claims. The judicial power extends only to "Cases" and "Controversies" under Article III. U.S. Const. art III, §2. The requirement that a plaintiff have standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.C. Cir. 2012) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Consequently, "[e]very plaintiff in federal court bears the burden of establishing the three elements that make up the irreducible constitutional minimum of Article III standing: injury-in-fact, causation, and redressability." *Id.* at 1362 (internal quotation omitted). Standing is "not dispensed in gross;" rather, Plaintiffs must show standing as to each claim. *Davis v. FEC*, 554 U.S. 724, 734 (2008) (internal quotation omitted).

Plaintiffs fail to demonstrate that they have suffered an injury-in-fact or that any injury they suffered was caused by the challenged policies. Plaintiffs allege that the FAM amendment and the cable resulted in a "substantially increased" risk of the procedural harm that Plaintiffs "will not receive their immigration visas before the end of the fiscal year." TRO at 13. In order to establish standing based on an increased risk of harm, Plaintiffs must show "*both* (i) a

*substantially* increased risk of harm and (ii) a *substantial* probability of harm with that increased risk taken into account." *Public Citizen v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1295 (D.C. Cir. 2007) (emphasis in original). Courts apply a "very strict understanding of what increases in risk and overall risk levels can count as 'substantial.'" *Id.*

Plaintiffs fall short of showing a substantial increase in the risk of harm that is traceable to the challenged policies because diversity visa adjudications appear to have accelerated, not decreased, after the challenged policies took effect. Consular offices adjudicated 15 and 17 diversity visas in October and November 2021, respectively. Ex. C to Def.'s Joint Opp'n ¶ 5, ECF No. 9-4. The cable was issued in mid-November 2021. Diversity visa adjudications accelerated rapidly starting in December 2021 and January 2022, with 224 and 1,358 adjudications respectively. *Id.* The FAM amendment occurred in February 2022, after which the dramatic acceleration in adjudications continued: between March and August 2022, consular offices adjudicated between 5,000 and over 15,000 diversity visas per month. *Id.* As of September 5, 2022, the Department had scheduled interviews for 70,872 applicants and their derivatives, which, according to the affidavit of Defendant Morgan Miles, the Director of KCC, makes interview scheduling "substantially complete" for purposes of reaching the 55,000 diversity visa cap. Ex. A to Def.'s Joint Opp'n ¶ 2, 4, ECF No. 9-2. Whether or not the challenged policies caused the acceleration, the fact of the acceleration belies Plaintiffs' assertion that those policies substantially increased their risk of harm. Accordingly, Plaintiffs have not met their burden to demonstrate that they suffered an injury-in-fact traceable to the challenged policies sufficient to create standing.[7]

---

[7] Even if Plaintiffs established standing, it is at best doubtful that the FAM modification or the cable constitutes "final agency action" that may be challenged under the APA. To constitute final agency action, the action must "mark the consummation of the agency's

## B. Unlawful Withholding and Unreasonable Delay Claims

Plaintiffs allege that the Department has unlawfully withheld and unreasonably delayed visa adjudication from plaintiffs under the APA, 5 U.S.C. § 706(1). As an initial mater, the Court finds that plaintiffs have standing to pursue these claims. If the Department had unlawfully withheld or unreasonably delayed Plaintiffs' visa adjudication, given the fact that Plaintiffs still have not had their interviews scheduled just one week before the September 30 deadline, that withholding or delay would have "substantially increased the risk of harm" and left Plaintiffs with a "substantial probability of harm with that increase taken into account." *Public Citizen*, 489 F.3d at 1295 (formatting omitted). This harm could be redressed by a court order that the Department must adjudicate Plaintiffs' applications and preserve unused visas for that purpose if those adjudications are not complete by September 30, 2022. *See Gomez v. Biden*, 2021 WL 3663535 *1, *2 (D.D.C. August 17, 2021) (ordering State Department to adjudicate diversity visas previously ordered reserved for plaintiffs beyond the September 30 deadline).[8]

---

decisionmaking process . . . [and] be one by which rights or obligations have been determined, or from which legal consequences will flow." *Sierra Club v. Environmental Protection Agency*, 955 F.3d 56, 61 (D.C. Cir. 2020) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). Put differently, the action must represent a "definitive position on the issue that inflicts an actual, concrete injury." *Mass. Coalition for Imm. Reform v. United States Dep't of Homeland Sec.*, 2022 WL 3277349, *1, *7 (D.D.C. August 11, 2022) (quoting *Darby v. Cisneros*, 509 U.S. 137, 144 (1993).

      The minor change to the FAM's language, substituting one vague temporal descriptor for another, does not rise to the level of action from which legal consequences flow. Regarding the cable, by Plaintiffs own admission it does not represent the consummation of the agency's decisionmaking process. *See* TRO at 9 n.2 ("Cable 21 STATE 115378 is the *first of a series* of Cables implementing the Recalibration Policy.") (emphasis added). In addition, it is hard to see how the cable created legal consequences that harmed Plaintiffs because its most concrete effect was to rescind prioritization guidance that Plaintiffs themselves contend was illegal. *See* Ex. E. to TRO.

[8] It bears mention that the extent of the Court's equitable power to reserve visas is an issue currently on appeal before the D.C. Circuit. *See Goodluck v. Biden*, No. 21-5263. But the Court could order that the adjudication be provided forthwith on or before September 30. *See, e.g.*, *Iddir v. Immigration and Naturalization Service*, 301 F.3d 492, 495 (7th Cir. 2002) (noting that

Accordingly, the Court turns to whether Plaintiffs can meet their burden to show a substantial likelihood of success on the merits. A threshold question for both unlawful withholding and unreasonable delay claims is whether Defendants had a legal duty to take the withheld or delayed action. *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63 & n.1 (2004) (explaining that "the only agency action that can be compelled under the APA is action legally *required*" and clarifying that, with respect to an unreasonable delay claim, "a delay cannot be unreasonable with respect to an action that is not required").

1. No Legal Duty Under Section § 1202(b)

Plaintiffs claim that Section 222(b) of the Immigration and Nationality Act, which lays out the process for applying for a visa, places such a duty on the Department. Codified at 8 U.S.C. § 1202(b) under the heading "Other documentary evidence for immigrant visa," this section describes the documentation that applicants for immigrant visas must furnish to the reviewing consular officer.

The last sentence of the section states: "All immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b). Plaintiffs argue that this sentence establishes a nondiscretionary legal duty for the Department to adjudicate immigrant visa applications. TRO at 3, 26. Defendants argue that § 1202(b) merely describes who adjudicates visas (a consular officer), and does not create any nondiscretionary duty for "the Department to schedule every DV selectee who initiates a visa case for an interview before a consular officer." Def.'s Opp'n at 5.

---

Maria Niculescu's diversity visa application was processed and she was interviewed and awarded permanent resident status all on the last day of the fiscal year).

Courts in this circuit have taken different approaches to this question in different contexts. Plaintiffs' view has prevailed in challenges to COVID-related policies that suspended the issuance of diversity visas outright. *See, e.g.*, *Filazapovich v. Dep't of State*, 560 F. Supp. 3d 203, 235 (D.D.C. 2021) (Mehta, J.) (holding that §1202(b) imposes a nondiscretionary duty on Defendants to adjudicate diversity visas); *Rai v. Biden*, 567 F. Supp. 3d 180, 195 (D.D.C. 2021) (Chutkan, J.) (same). By contrast, Defendants' view has prevailed where, as here, plaintiffs challenged only the delay in adjudicating their particular applications. *See, e.g.*, *Pushkar v. Blinken*, 2021 WL 4318116 *1, *10 (D.D.C. September 23, 2021) (Kollar-Kotelly, J.) (finding no nondiscretionary duty to schedule an individual applicant's consular interview within a particular timeframe and distinguishing *Filazapovich* on grounds that plaintiffs in that case "challenged not only Defendants' failure to adjudicate their individual visa petitions, but also the Executive policies writ large that halted all diversity visa processing . . ."); *Zarei v. Blinken*, 2021 WL 9146060 *1, *1 (D.D.C. September 30, 2021) (Nichols, J.) (finding that § 1202(b), read in context, concerns "*who* reviews visa applications rather than whether all such applications must be reviewed (much less be reviewed by a certain time)").[9]

Whether a suspension, or even a significant slowdown, of diversity visa adjudications would constitute a violation of a nondiscretionary duty established under § 1202(b) or under the broader visa processing framework established by the INA and its implementing regulations is not a question before the Court in this case. The question before the Court with respect to

---

[9] Perhaps reflecting this division, Plaintiffs' reply brief recasts the argument in their TRO that § 1202(b) obligates the Department to adjudicate every visa application, instead arguing that § 1202(b) merely obligates the Department "to adjudicate" until 55,000 diversity visas have been issued. *Compare* TRO at 3 ("There is no exception.") *with* Plaintiffs' Reply at 9 (disputing that they asserted that Congress intended the Department to adjudicate "**all** DV cases") (emphasis in original). This reframing provides no help to Plaintiffs, as the Department appears poised to reach or come close to the statutory cap of 55,000 diversity visas. *See* Ex. A to Def.'s Opp'n.

12

Plaintiffs' unlawful withholding and unreasonable delay claims is whether, in the absence of a suspension or slowdown, § 1202(b) places a nondiscretionary duty on the Department to review and adjudicate Plaintiffs' visa applications in particular before the September 30 deadline.  *See* Plaintiffs' Reply at 16.  The Court is persuaded that, read in context, the last sentence of § 1202(b) more likely dictates who reviews visa applications without creating a nondiscretionary duty to adjudicate any particular application within a given timeframe.[10]  As such, the Court finds that Plaintiffs have failed to carry their burden to clearly establish a substantial likelihood that they will prevail in showing a nondiscretionary duty to support their unlawful withholding and unreasonable delay claims.

2.  No Unreasonable Delay Under *TRAC* Analysis

Even if Plaintiffs had established a legal duty to adjudicate their diversity visa applications under § 1202(b) or elsewhere, they have not carried their burden to establish an unreasonable delay using the factors identified in *Telecommunications Research and Action Center (TRAC) v. FCC*, 750 F.2d 70 (D.C. Cir. 1984).  Unlike an unlawful withholding claim, which challenges "discrete" agency action, *Norton*, 542 U.S. at 62-63, an unreasonable delay claim by nature requires review of "non-final agency action."  *TRAC*, 750 F.2d at 79 (internal quotation omitted).  Accordingly, "given the clear legislative preference for review of final action, [courts] must be circumspect" in evaluating unreasonable delay claims, and should hear

---

[10] Plaintiffs contend that language of § 1202(b) is part of a pattern of "affirmative language throughout" the statutory framework.  TRO at 2.  Plaintiffs focus on 8 U.S.C. 1153(c)(1)(A)-(E), which uses the word "shall" a number of times, but only to direct how the Attorney General will determine immigrant preference under the program.  Plaintiffs also point to 22 C.F.R. § 4281(a) and 9 FAM § 504.9-2, TRO at 18, but these only discuss the process of adjudication *after* the applicant appears for a consular interview.  *See* 22 C.F.R. § 42.81(a) ("When a visa application *has been properly completed and executed before a consular officer* . . ."); 9 FAM § 504.9-2 ("Once an application *has been executed* . . .) (emphasis added).  None of this language requires adjudication of specific applicants' visa applications within a particular timeframe.

only cases of "clear right such as outright violation of clear statutory provision or violation of basic rights established by a structural flaw." *Id.* (internal quotation and formatting omitted). The *TRAC* court identified six factors to guide the unreasonable delay analysis:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) . . . the effect of expediting delayed action on agency activities of a higher or competing priority; (5) . . . the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (internal quotations omitted).

The D.C. Circuit has emphasized the importance of factor four. *See Mashpee Wampanoag Tribal Council v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003). Specifically, even when all other factors favored relief, the D.C. Circuit has denied relief where a petitioner seeks "a judicial order putting the petitioner at the head of the queue" with "no net gain" because it would simply "move all others back one space." *Id*. (quoting *In re Barr Laboratories*, 930 F.2d 72, 75 (D.C. Cir. 1991) (formatting omitted).

This is Plaintiffs' situation. In *Khamrabaeva*, as of September 5, 2022, 607 cases associated with 1,767 applicants await scheduling at the U.S. Consulate in Almaty, and 285 of those cases are before Plaintiffs in the scheduling order. Ex. A to Def.'s Opp'n ¶ 10. In

*Elsadawy*, 841 cases associated with 1,986 applicants await scheduling at the U.S. Embassy in Abu Dhabi, and 641 of those cases are before Plaintiffs in the scheduling order. Ex. A to Def.'s Joint Opp'n ¶ 19. In *Vokhobov* and *Mavlonova*, 618 cases associated with 1,905 applicants await scheduling at the U.S. Embassy in Tashkent, and 179 and 242 of those cases are before Plaintiffs in each case, respectively, in the scheduling order. *Id.* ¶¶ 25, 31. In *Daif*, 694 cases associated with 1,661 applicants await scheduling at the U.S. Embassy in Riyadh, and 669 of those cases are before plaintiffs in the scheduling order. *Id.* ¶ 37.

Defendants repeatedly argue that *TRAC* factor four favors them because moving Plaintiffs to the front of the line is a "zero-sum game." Def.'s Joint Opp'n at 4, 6, 8, 10. Plaintiffs contend that it does not matter how many cases are before theirs in the scheduling order because the Department has not been scheduling cases in rank order, and accordingly they do not seek to skip the line but rather to reclaim their "rightful place" in it.[11] Plaintiffs' Reply at 2, 4, 5. Plaintiffs' argument ignores that, even assuming everyone was scheduled out of rank order, they nonetheless seek exactly what the D.C. Circuit refused: a judicial order moving them up, and therefore others back, with no net gain. *Mashpee Wampanoag Tribal* Council, 336 F.3d at 1100; *see also, e.g.*, *Varghese v Blinken*, 2022 WL 3016741 *1, *6 (D.D.C. July 29, 2022) (finding that *TRAC* factor four weighs against plaintiff seeking visa adjudication because,

---

[11] Plaintiffs only fully developed and supported this argument in their reply brief, so it is not properly before the court. *See* Plaintiffs' Reply at 15 (alleging for the first time with new evidence that, writ large, "Defendants intentionally deviated from processing FY-2022 diversity visa applications by case number rank in early December 2021"). Regardless, Plaintiffs fall short of meeting their burden, which is heavy in the context of a motion for emergency relief, in the face of unequivocal sworn testimony from agency officials. *See* Declaration of Morgan Miles, Ex. A to Def.'s Joint Opp'n, ¶ 4-10 (explaining how regional rank order, in conjunction with the timing of applicants' submissions and availability at relevant consular posts, determines interview scheduling); Declaration of Rebecca Austin, Ex. D to Def.'s Joint Opp'n ¶ 2, ECF No. 9-5 (same).

"[a]lthough [plaintiff] argues that he is not asking . . . to be put ahead in line of others . . . he has not provided sufficient facts showing that the Court granting relief would do anything more than expedite [this] case at the expense of similarly waiting applicants") (internal quotations omitted); *Khan v. Blinken*, 2021 WL 5356267 *1, *4 (D.D.C. November 17, 2021) (rejecting plaintiff's argument that "she is not asking for her fiancé to be put ahead in line of others because he is already at the front of the line, simply awaiting the consular officer's completion of administrative processing" on grounds that "[p]rocessing capacity is presently a zero-sum game, and granting Plaintiff's request to expedite would necessarily mean additional delays for other applicants") (internal quotations omitted).

Accordingly, even if Plaintiffs could establish that the Department has a legal duty to adjudicate their diversity visa applications before September 30, and even if they could establish that the other *TRAC* factors favor them,[12] they have failed to demonstrate a substantial likelihood that they will prevail in their unreasonable delay claim.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a temporary restraining order in each case is DENIED. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

---

[12] This is dubious at best with respect to *TRAC* factor one in particular. According to the affidavit of Defendant Morgan Miles, KCC creates the scheduling order using an applicant's regional rank order and the date of the visa number allocation. Ex. A to Def.'s Joint Opp'n ¶ 8. Using that order, applicants are actually scheduled based on availability at the relevant consular post, *id.* ¶ 9, which is a function of personnel and resource constraints in response to global events. Ex. B to Def.'s Joint Opp'n ¶ 25. Plaintiffs argue that this scheduling process is unreasonable in light of the Department's policies and regulations concerning visa application processing and adjudication. TRO at 20-21; Plaintiffs' Reply at 17-18. It is far from clear that Plaintiffs are substantially likely to win this argument.

Dated: September 23, 2022                                              RUDOLPH CONTRERAS
                                                                       United States District Judge